IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **B.D.G.,** *an individual*, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:22-cv-3202** |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **CHOICE HOTELS INTERNATIONAL,** | : | |
| **INC.** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant Choice Hotels International, Inc's ("Choice")

Motion to Dismiss (ECF No. 8). For the following reasons, Choice's Motion to Dismiss is

**GRANTED in part, DENIED in part**. (ECF No. 8).

## I.     BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"),

18 U.S.C. § 1595(a). Plaintiff B.D.G. alleges she was sex trafficked in an Econo Lodge in

Columbus, Ohio—a Choice branded property. (ECF No. 1, ¶¶ 39–53). Plaintiff alleges that Choice

facilitated "human trafficking through their participation in the harboring of Plaintiff and her

traffickers for the purpose of commercial sex." (*Id.*, ¶ 86). Specifically, B.D.G. alleges that Choice:

(1) despite making a public commitment to combating human trafficking, ignored obvious signs

of sex trafficking on their properties and failed to implement anti-trafficking employee training;

(2) collected data from B.D.G. and her traffickers including room reservations, identification,

payment information, and sex trafficking website searches on the hotel's Wi-Fi; (3) profited from

said room rentals and data collection; (4) substantially controlled the day-to-day operations of the

Econo Lodge; and (5) had access to internal reports prepared by Econo Lodge staff and external

1

police reports about Plaintiff's abuse including physical altercations in public places, witnessing multiple "johns" going into Plaintiff's hotel room daily, and Plaintiff's health deterioration. (*Id.*, ¶¶ 13, 26, 58, 61, 68–74; ECF No. 5, ¶¶ 65, 79–80). B.D.G. argues that Choice had an obligation "not to benefit financially or receive anything of value from a venture that they knew, or should have known," involved sex trafficking and those "acts, omissions, and commissions" constitute a violation of the TVPRA. (ECF No. 1, ¶ 86).

Plaintiff commenced this action on August 21, 2022 (ECF No. 1) and filed an Amended Complaint on October 28, 2022 (ECF No. 5). On January 18, 2023, Choice filed a Motion to Dismiss, or in the alternative a Motion to Strike. (ECF No. 8). The parties filed timely response and reply briefs. (ECF Nos. 12; 13). Therefore, this Motion is ripe for review.

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

2

This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In general, courts shy away from wielding their power to strike, as "it is well established that the action of striking a pleading should be sparingly used by the courts" and should "be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (first citing *Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932); then citing *Batchelder v. Prestman*, 138 So. 473 (Fla. 1931); *Collishaw v. Am. Smelting & Refining Co.*, 190 P.2d 673 (Mont. 1948)). But ultimately, the decision whether to grant a motion to strike falls within the discretion of the district court. *See Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (collecting cases). After all, motions to strike can "serve a useful purpose by . . . saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989)).

### III.     MOTION TO DISMISS

### A.  Direct Civil Liability Under the TVPRA, 18 U.S.C. § 1595

This Court has conducted extensive analysis of the civil liability of hotel defendants in sex

trafficking cases under the TVPRA.[1] The TVPRA provides for criminal penalties:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Central to Plaintiff's claim is the TVPRA's standard for civil liability:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

A § 1595(a) claim can stand alone, and civil defendants need not have committed the

underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d 959, 964 (S.D.

---

[1] *See M.A. v. Wyndham Hotels & Resorts, Inc. et al.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *A.R. v. Wyndham Hotels & Resorts, Inc., et al.*, No. 2:21-cv-4935, 2022 WL 17741054 (S.D. Ohio Dec. 16, 2022); *A.W. v. Red Roof Inns, Inc., et al.*, No. 2:21-cv-4934, 2022 WL 17741050 (S.D. Ohio Dec. 16, 2022); *T.P. v. Wyndham Hotels & Resorts, Inc., et al.*, No. 2:21-cv-4933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *H.H. v. G6 Hospitality, LLC, et al.*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc., et al.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof, Inc., et al.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020).

Ohio 2019); *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (explaining that the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). Therefore, B.D.G.'s allegation that she is a victim of trafficking under § 1591(a) sufficiently pled that she is "a victim of this chapter" pursuant to § 1595(a).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a), which requires: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

### 1. *Affirmative Duty to Act*

As a threshold matter, Choice argues that the TVPRA does not impose an affirmative duty on Defendant to prevent sex trafficking in their branded facilities. (ECF No. 8 at 7 (citing *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 182 (E.D. Pa. 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking."))). Plaintiff responds that Choice mischaracterizes her claim, which instead alleges that Choice assisted, supported, or facilitated violations of § 1591(a)(1). (ECF No. 12 at 13). Choice replies that contrary to that assertion, Plaintiff's Complaint is replete with allegations about Choice's failures to prevent sex trafficking at its hotels. (ECF No. 13 at 6).

5

Defendant omits in its argument, that in *A.B.*, the federal district court did not read the plaintiff's complaint as "an attempt to create a new theory of liability on a business failing to affirmatively prevent sex trafficking," but instead read the complaint as seeking the civil remedy provided for victims of sex trafficking by Congress. *A.B.*, 455 F.Supp.3d at 182. This Court reads B.D.G.'s claim in the same manner. The TVPRA assigns liability to those who financially benefit from participation in ventures that they knew, or should have known, involved sex trafficking, *see* 18 U.S.C. §§ 1591(a)(2), 1595(a), regardless of whether those individuals or entities actually carried out the trafficking themselves. Plaintiff does not seek to create a new theory of liability under the TVPRA, but instead uses Choice's alleged omissions to act, despite alleged knowledge of sex trafficking in their hotels, to demonstrate how Choice benefitted. Therefore, B.D.G.'s allegations meet the pleading requirements of Federal Rule of Civil Procedure 8.

## 2. *Participation in a venture*

Under § 1595's beneficiary theory of liability, a plaintiff must allege that the defendant participated in a venture in violation of § 1591. 18 U.S.C. § 1595(a). Choice argues that Plaintiff does not allege that Choice violated § 1591, but simply that Choice was involved in a "contractual franchise business venture with the non-party franchisee"—failing to meet the pleading requirements of § 1591. (ECF No. 8 at 9–10). Choice points to the Eleventh Circuit's opinion in *Doe #1 v. Red Roof Inns, Inc.*, which held that the alleged venture must be the actual venture that committed the criminal violation. (*Id.* at 10 (citing 21 F.4th 714, 725 (11th Cir. 2021)). Choice maintains that it had no control over Plaintiff's traffickers to demonstrate a common undertaking or tacit agreement, and any alleged financial benefit from room rentals would exist between Choice and Econo Lodge, not Choice and B.D.G.'s traffickers. (*Id.* at 11–12). Plaintiff responds that Choice was intimately involved in the venture because it jointly employed the Econo Lodge staff

who saw B.D.G's constant abuse and cleaned her hotel room of evidence of assault, set room prices, required centralized reservation procedures, set standards for and collected data from the hotel's Wi-Fi used by B.D.G's traffickers, and benefitted financially as a result of participating in all those actions. (ECF No. 12 at 11–12).

Choice replies that Plaintiff cannot connect the dots between Choice and B.D.G's traffickers because she does not allege an agreement between those specific parties. (ECF No. 13 at 7–8 (citing *Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022)). Choice argues that Plaintiff only demonstrates a relationship between Econo Lodge and B.D.G's traffickers, but because Econo Lodge is not named as a defendant, Plaintiff's allegations must fail. (*Id.* at 8–9).

This Court held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F.Supp.3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d at 288–89); *see also Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion). Further, participation in a venture under the TVPRA does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F.Supp.3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F.Supp.3d at 968–69; *S.J.*, 473 F.Supp.3d at 153–54; *Doe S.W.*, 2020 WL 1244192, *6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

Choice argues that this Court should follow the lead of the Ninth and Eleventh Circuits. In *Reddit*, parents of minors who had sexually explicit images posted of them by users on Reddit, the social media platform, filed a class action under the TVPRA against the platform. *Reddit*, 51 F.4th at 1139–40. The Ninth Circuit concluded, however, that a "complaint against a website that merely alleges trafficking by the website's users—without the participation of the website—would not survive" a motion to dismiss because federal law requires that a "defendant-website violate [§ 1591] by directly sex trafficking, or with actual knowledge, 'assisting, supporting, or facilitating trafficking.'" *Id.* at 1144. The court reasoned that general allegations did not allege "a connection between the child pornography posted on Reddit and the revenue Reddit generates, other than the fact that Reddit makes money from advertising on all popular subreddits." *Id.* at 1145–46. Similarly, in a TVPRA case with nearly identical facts to this case, the Eleventh Circuit concluded that the defendant hotel franchisors financially benefitted from rental of hotel rooms to traffickers, but that the franchisors did not participate in an alleged common undertaking. (ECF No. 14 at 9 (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–27 (11th Cir. 2021)).

First, neither the Ninth nor the Eleventh Circuit's decisions are controlling here. Second, Plaintiff does allege that Choice participated in a venture that violated § 1591, by knowingly participating in a commercial venture they should have known profited from sex trafficking, as defined in § 1591(a)(2) and § 1595(a). Third, the Ninth Circuit analyzed a beneficiary claim pursuant to § 1595 within the context of whether Reddit could receive immunity for suit pursuant to 47 U.S.C. § 230(e)(5)(A), which establishes that typical immunities from liability for websites related to content posted by users do not apply where child pornography is involved. The Ninth Circuit ruled that immunity for websites did not apply under § 230(e)(5)(A) where Reddit's

underlying conduct violated § 1951. That immunity statute for websites, however, is not at issue in this case.

Fourth, the Eleventh Circuit addresses whether the hotel franchisors were part of a sex trafficking venture, but it never addressed the "commercial venture" theory of participation in a sex trafficking venture. Here, B.D.G. alleges that Choice: (1) profited from the rooms B.D.G.'s traffickers rented and failed to implement trafficking prevention training programs; (2) had access to internal and external incident reports detailing B.D.G.'s abuse; (3) collected room reservation, identification, payment, and sex trafficking website data from the trafficker's use of hotel Wi-Fi; and (4) had expansive control over franchisee policies and operations but did not use that power to hold the franchisees accountable. (ECF Nos. 1, ¶¶ 61–83; 5, ¶¶ 56–82). This Court finds that Plaintiff's allegations that Choice profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet § 1595's definition of "participation in a venture." Here, Defendant was involved in a business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having constructive knowledge of ongoing trafficking based on the totality of the circumstances.

Of note, Plaintiff incorrectly argued in her response that Wyndham's actions meet § 1591(e)(4)'s definition of "participation in a venture." In *M.A.*, this Court not only ruled that the definition of "participation in a venture" from § 1591(e)(4) was not applicable to § 1595, but plaintiff's Counsel, who also represents B.D.G., argued as much. While this oversight is not detrimental to Plaintiff's allegations, Plaintiff's Counsel is again reminded that this Court's past rulings are binding and represent this Court's interpretation of the TVPRA.

### 3. Knew or should have known the venture was engaged in trafficking

Choice argues that incidents of violence and "johns" cycling through B.D.G.'s room observed by the Econo Lodge staff and Choice's access to guest information and data are insufficient to establish that Choice should have known that B.D.G. was being forced to engage in commercial sex. (ECF No. 8 at 16–17). Choice maintains that general knowledge about sex trafficking in the hotel industry is also insufficient to demonstrate that Choice knew of B.D.G.'s specific alleged trafficking. (*Id.* at 13–14). Plaintiff responds that Choice's constructive knowledge of B.D.G.'s alleged trafficking comes from "its employees and agents on the ground." (ECF No. 12 at 9). Plaintiff argues that Choice cannot bury its head in the sand and argue it knew nothing when there were many alleged indicators of ongoing sex trafficking. (*Id.* at 10). Choice replies that because Plaintiff did not bring this claim against Econo Lodge, this Court must apply a different calculus than that applied in *M.A.* where the franchisee was also named. (ECF No. 13 at 10–11 (citing 425 F.Supp.3d at 968)). Namely, Choice maintains that the incidents observed by the staff at the Econo Lodge on the ground nor guest information and data collected over Wi-Fi would have alerted Choice to B.D.G's trafficking. (*Id.* at 12).

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. While Plaintiff fails to allege that Choice had actual knowledge, or knew, about her trafficking, she does allege that Choice "should have known" of the alleged ongoing trafficking. The "should have known" language "echoes common language used in describing an objective standard of negligence." *M.A.*, 425 F. Supp. 3d at 965. Therefore, constructive knowledge of trafficking crimes is sufficient for liability to attach. *Id.* at 970 (citing *Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D. Conn. 2013)); 18 U.S.C. § 1595(a). This Court has held that notice of "the prevalence of sex trafficking generally at [ ]

hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *Id.* at 968.

In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557. Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women then sexually assaulting and abusing them at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus would have done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

B.D.G.'s allegations do not rise to the level of those present in *Ricchio*, but neither are they as sparse as the facts presented in *Lawson*. Choice cannot allege that Plaintiff merely pleads that Choice has "general knowledge" of sex trafficking in the industry and that it can escape liability for constructive knowledge based on the franchise model. B.D.G. sufficiently alleges that Choice

11

had constructive knowledge of trafficking occurring at its hotels. 18 U.S.C. § 1595(a). She alleges: (1) Econo Lodge staff observed the physical abuse of B.D.G. by her traffickers in public spaces, saw "johns" cycle into and out of her room, and other red flags such as frequent linen changes, excessive condoms in the trash, and signs of illegal drug use; (2) Choice had "access to public police reports, news reports, and internal reports generated by customers and employees, regarding sex trafficking at their own hotel locations" and Econo Lodge staff regularly reported to Choice "customer data and other indicators of trafficking including suspicious criminal activity, web data indicating use of commercial sex websites, and data associated with reservations"; and (3) Choice regularly communicated to its franchisees articles and alerts regarding the prevalence of human trafficking in the industry. (ECF No. 5, ¶¶ 46, 62–63).

In comparable environments, courts have found failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"); *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint sufficiently alleged willful blindness under § 1983 where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape").

Here, B.D.G. alleged that Defendant was on notice about the prevalence of sex trafficking at its hotels yet failed to prevent its occurrence. In accordance with this Court's previous rulings,

these allegations pass muster. *See e.g., M.A.*, 425 F.Supp.3d 959 (finding corporate defendants had constructive knowledge of sex trafficking of plaintiff in defendant branded hotel). In fact, B.D.G.'s allegations provided further evidence of constructive knowledge held by Choice beyond that alleged by plaintiffs with nearly identical claims against Choice in similar litigation before this Court. Specifically, B.D.G. alleges that Choice had access to reservation, payment, internet, and public safety reporting data that reinforced the fact that, based on Plaintiff's pleadings, Choice was aware that sex trafficking in the industry not only occurred in their own branded hotels, but in the Econo Lodge in Columbus. Therefore, B.D.G.'s Complaint sufficiently alleges constructive knowledge under § 1595 for purposes of surviving this Motion to Dismiss.

### 4. Knowing benefit

Finally, Plaintiff must also allege that Choice knowingly benefitted, whether financially or otherwise, from her alleged harm. 18 U.S.C. § 1595(a). Choice argues that B.D.G. does not, and cannot, allege that Choice specifically derived profit as a part of a sex trafficking venture. (ECF No. 8 at 18). Choice maintains that it only receives a percentage of gross room revenue from its franchisees, which derives from all operations, not just those involving trafficking (*Id.*). Further, it argues that Plaintiff fails to plead that Choice knew that the funds were in any way connected to the alleged trafficking. (*Id.* at 19). Plaintiff responds that Choice knowingly benefitted by renting rooms to B.D.G.'s traffickers and collecting guest data by providing Wi-Fi to the alleged traffickers. (ECF No. 12 at 7).

Choice is mistaken in asserting that a defendant must have an awareness or understanding that it is receiving some benefit from participating in a sex trafficking venture. (ECF No. 13 at 13). This element merely requires that Defendant knowingly receives a financial benefit or some other benefit of value, not that the perpetrator have actual knowledge of the sex trafficking venture. *A.C.*,

2020 WL 3256261, at *4. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F.Supp.3d at 965; *H.H.*, 2019 WL 6682152 at *2. *See also J.L.*, 521 F.Supp.3d at 1061 (allegations that a hotel defendant received a percentage of room revenue where trafficking occurred met the knowingly benefited element of the TVPRA); *Gilbert v. U.S. Olympic Comm.*, 423 F.Supp.3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). Because B.D.G. alleges that Choice benefited financially from renting rooms to her traffickers and from collecting data, the pleadings sufficiently meet this element of the § 1595(a) standard.

Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA.

### B.  Failure to Plead Properly, Fed. R. Civ. P. 8(a)(2)

Separately, Choice argues that B.D.G. fails to distinguish which allegations apply to Choice and which apply to the non-party franchisees, in violation of Federal Rule of Civil Procedure 8(a)(2) which requires that Choice have adequate notice "of the claims against [it] and the grounds upon which each rest." (ECF No. 8 at 19 (citing *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (quotation omitted)). Plaintiff responds that she brings a direct beneficiary theory of liability claim against Choice. (ECF No. 12 at 6).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). This does not require "'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). B.D.G. unquestionably brings a civil action against

14

Choice, pursuant to § 1595(a). Plaintiff provides detailed allegations about the way Choice benefitted financially from B.D.G.'s trafficking, the reports provided to Defendant about safety incidents and data collection which support allegations of constructive knowledge, and details about Choice's control over the Econo Lodge's daily operations. Despite the parties' differing allegations about Defendant's operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation. *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020). Plaintiff meets the basic pleading requirements of Federal Rule of Civil Procedure 8.

### C. Vicarious Liability

#### 1. Agency

Choice argues that the TVPRA does not contemplate a vicarious theory of liability generally, nor a theory of agency specifically. (ECF No. 8 at 20–22). Choice alleges that even if vicarious liability was a plausible theory under the TVPRA, Plaintiff fails to plead allegations that demonstrate Choice "owned, operated, or supervised" the Econo Lodge beyond Choice simply enforcing contractual franchise standards. (*Id.*). Choice maintains that a franchise relationship does not automatically establish an actual agency relationship. (*Id.* at 22; ECF No. 13 at 14–15). Further, Choice argues that Plaintiff also fails to allege an apparent agency relationship between Choice and Econo Lodge because Plaintiff was taken by force to the Econo Lodge and could not have reasonably relied on any manifestations by Choice. (ECF No. 8 at 22). Choice maintains that Plaintiff "eviscerates" her conclusory vicarious liability allegations by simultaneously claiming that Choice is vicariously liable for Econo Lodge's actions, while also alleging that Choice had no control over the implementation of human trafficking awareness training or policies and security

measures at the hotel. (*Id.* at 3; ECF No. 13 at 14). Plaintiff responds that she adequately pleads the ways in which Choice controls the business operations, management, training, supervision, and administration of its franchisees. (ECF No. 12 at 13). Further, Plaintiff argues that the profit-sharing model demonstrates further the existence of an agency relationship. (*Id.* at 14).

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) of Agency* § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id.* at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting *Restatement (Second) of Agency* § 219(1) (1957)). While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker*, 804 F.Supp.2d at 623 ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself *preclude* the existence of a principal-agent relationship between them."). To determine whether "a principal-agent

relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Regarding Plaintiff's actual agency theory of vicarious liability, B.D.G. alleges that choice exercises day-to-day control over the Econo Lodge. Specifically, this includes requiring the franchisee to: (1) use a centralized property management system linked to Choice's corporate network and data center; (2) allow for periodic inspections of their brand locations; (3) process reservation, payment, and occupancy information through Choice's centralized systems; (4) provide audit reports to Choice; (5) use approved internet service vendors; (6) use training and orientation materials created by Choice; (7) follow Choice's regulated room rates and insurance coverage requirements; and (8) adhere to other brand quality standards. (ECF No. 5, ¶¶ 67–73).

This Court also rejects Defendant's assertion that Plaintiff contradicts her own argument by simultaneously alleging that Choice had both control and no control over Econo Lodge's operations and implementation of trafficking prevention trainings and policies. Taking these allegations as true, Choice did have substantial control over daily operations of the business, but according to Plaintiff, failed to use that power to implement anti-trafficking procedures. These allegations are sufficient to demonstrate Choice's control over the franchisee properties through an actual agency relationship and to survive a motion to dismiss.

Plaintiff fails to respond to Choice's argument regarding apparent agency authority, so this Court will consider Plaintiff to have conceded this point. Choice's Motion as it relates to the limited issue of the applicability of apparent agency vicarious liability is **GRANTED**. The Motion is otherwise **DENIED** as it relates to Plaintiff's actual agency theory of vicarious liability.

2. *Joint Employer Theory*

Choice argues that the joint employer theory of vicarious liability is only applicable to the franchise model in limited circumstances that are not present in this case. (ECF Nos. 8 at 23; 13 at 15). Choice alleges that under a single employer theory—which focuses on the interrelatedness of separate corporate entities—and the joint employer theory—which focuses on whether separate entities jointly control each other's employees—Plaintiff's allegations must fail because Choice's control over Econo Lodge constitutes only minimal control common to franchise relationships. (ECF No. 8 at 24–25). Plaintiff responds that Choice controls all aspects of the employment relationship and considers Econo Lodge employees as its own. (ECF No. 12 at 15). Further, B.D.G. maintains that Choice sets company culture, employee benefits, and compensation. (*Id.*).

Whether two employers are a joint employer also often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.").

18

While Plaintiff does not use the specific words "joint employer" in her Complaint, she does allege that "Choice employees work throughout the Columbus Econo Lodge by Choice." (ECF No. 5, ¶ 23). Plaintiff's joint employer theory must fail, however, as she, at most, alleges that Choice sets company culture and that it provides training and orientation materials for branded property staff. (ECF No. 12 at 15). The assertions Plaintiff makes regarding how Choice controls all aspects of the employment relationship go unsupported by the citations she makes to the First Amended Complaint. Any mention of control over hiring, training, and other employment-specific policies appears first in Plaintiff's Response to the Motion to Dismiss. *Cf. Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (explaining that a non-moving party may not raise a new legal claim for the first time in a responsive pleading). Joint employers "*share* or co-determine those matters governing the essential terms and conditions of employment" *Swallows v. Barnes & Noble Book Stores, Inc.* 128 F.3d 990, n. 4 (6th Cir. 1997) (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982) (emphasis in original)). While setting company culture and providing training materials certainly fall within essential employment terms, these allegations do not include setting other essential terms and conditions of employment such as hiring, training, retention, advancement of staff, and setting rates of pay. *See A.R.*, 2022 WL 17741054, at *11 (finding joint employer theory of vicarious liability sufficiently pleaded in nearly identical TVPRA litigation where Plaintiff pled that Defendant Wyndham promulgated "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay.").

While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment

policies. That is not present here. Therefore, Defendant's Motion to Dismiss as it relates to Plaintiff's joint employer theory of vicarious liability is **GRANTED**.

### D. Joint and Several Liability

Plaintiff alleges that her injuries are "indivisible", and that Choice is "jointly and severally" liable for Plaintiff's damages. (ECF No. 1, ¶¶ 33–34). Choice argues that this allegation is irrelevant as Choice is the only defendant in this case, and regardless, that the TVPRA does not provide for joint and several liability. (ECF No. 8 at 25–26). Plaintiff fails to respond to this contention in her Response. Therefore, this Court will consider Plaintiff to have conceded this point, and Choice's Motion as to this limited issue is **GRANTED**.

## IV. MOTION TO STRIKE

The Motion to Strike, pursuant to Federal Rule of Civil Procedure 12(f) addresses Plaintiff's Amended Complaint (ECF No. 5) and Choice's contention that additions made to the Amended Complaint—specifically those related to the hospitality industries alleged involvement in sex trafficking—are salacious, inapplicable to the case, and will only serve to confuse the issues. (ECF Nos. 8 at 26; 13 at 16). Plaintiff responds that the at-issue allegations provide "relevant background material on the hospitality industry and its involvement in sex trafficking." (ECF No. 12 at 15–16). Plaintiff argues that the allegations are relevant to the subject matter of the claim, and do not unduly prejudicial Choice by just portraying Choice in a negative light. (*Id.* at 16).

"[C]ourts have inherent power to control their dockets, which entails the power to strike a document or a portion of a document." *Olagues v. Steinour*, No. 2:17-cv-049, 2018 WL 300377 at *1 (S.D. Ohio Jan. 4, 2018) (citing *Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp. 2d 818, 822 (S.D. Ohio June 22, 2010)). Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Though this power should be "used sparingly," "courts have liberal discretion to strike inappropriate filings." *Sheets v. U.S. Bank, Nat'l Ass'n*, No. 14-cr-10837, 2014 WL 5499382 at *2 (E.D. Mich. Oct. 30, 2014) (internal quotation marks omitted); *see also Jones v. Ahmed*, No. 1:14-cv-0964, 2019 WL 1433853 at *1 (S.D. Ohio Mar. 31, 2019) (upholding Magistrate Judge's decision to strike a party's second response brief because it was "improperly filed").

Choice's argument rests on the assertion that Plaintiff dramatizes the relationship between the hospitality industry and sex trafficking. This Court has held, however, that allegations of pervasiveness of sex trafficking in the hospitality industry are highly relevant to this matter. Specifically, the failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *Burlington Industries, Inc.*, 524 U.S. at 758–79. Given the relevance of the totality of the circumstances known to Choice, as an industry member, this Court finds Plaintiff's amended allegations relevant and **DENIES** the Motion to Strike. (ECF No. 8).

## V.    CONCLUSION

For the foregoing reasons, Choice's Motion to Dismiss is **GRANTED in part** as it relates to the limited issues of apparent agency vicarious liability, joint employer vicarious liability, and allegations that Choice is jointly and severally liable, **and DENIED in part** as to all other issues. (ECF No. 8).

**IT IS SO ORDERED.**

_____

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 12, 2023**

21